IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NELDA WILSON, *et al*.,

            Plaintiffs,

    v.

NATHAN COX,

            Defendant.

Case No. 3:15-cv-59-SI

**OPINION AND ORDER**

Steven Goldberg, 3525 SE Brooklyn Street, Portland, OR 97202; and Talia Y. Stoessel, BENNETT, HARTMAN, MORRIS & KAPLAN, LLP, 210 SW Morrison Street, Suite 500, Portland, OR 97204. Of Attorneys for Plaintiffs.

Michael G. Smith, THE GATTI LAW FIRM, 1781 Liberty Street SE, Salem, OR 97302. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiffs are Trustees of AGC-International Union of Operating Engineers Local 701 Health and Welfare Trust Fund ("Trust Fund"). The Trust Fund is a trust created pursuant to collective bargaining agreements. The collective bargaining agreements, the Health & Welfare Plan Summary Plan Description (most recently dated March 2010) and its Amendments, and the Wraparound Plan Document, which incorporates the terms of the Summary Plan Description among other documents (most recently dated July 1, 1995), set forth the provisions of the "Trust Fund Plan." At all relevant times, Defendant Nathan Cox ("Cox" or "Defendant") had medical insurance coverage under the Trust Fund Plan.

PAGE 1 – OPINION AND ORDER

Plaintiffs bring this action to enforce the terms of the Trust Fund Plan, which constitute an Employee Benefit Plan, under the civil enforcement section of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3). Plaintiffs seek a declaratory judgment that they are entitled to a constructive trust on behalf of the Trust Fund Plan for a portion of the settlement funds Cox received for a personal injury settlement obtained after an automobile accident. The settlement funds currently are being held in trust by Cox's attorney. Plaintiffs assert that the Trust Fund Plan paid medical expenses on behalf of Cox for injuries Cox suffered that were the responsibility of a third party and for which Cox received a personal injury settlement. Cox responds that the relevant medical expenses were not caused by his automobile accident and thus were not the responsibility of a third party.

Both Parties filed motions for summary judgment. For the reasons discussed below, Plaintiffs' motion is denied and Defendant's motion is granted.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## B. ERISA Civil Enforcement

ERISA protects employee pensions and other benefits by providing insurance to pension plans, specifying certain plan characteristics, and establishing general fiduciary duties applicable to the management of both pension and nonpension benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). In 29 U.S.C. § 1132(a)(3), Congress provided plan fiduciaries with the ability to enforce the terms of the plan. *Gabriel v. Alaska Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014). "Section 1132(a)(3) provides that '[a] civil action may be brought . . . (3) by a

participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate equitable relief (i) to redress [any act or practice which violates any provision of this subchapter or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan.'" *Id.* (alterations in original) (quoting 29 U.S.C. § 1132(a)(3)). In such an action, a plaintiff "must prove both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan; and (2) that the relief sought is appropriate equitable relief." *Id.* (quotation marks and citations omitted). "A claim fails if the plaintiff cannot establish the second prong . . . regardless of whether 'a remediable wrong has been alleged.'" *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)).

## C. Administrative Record

Plaintiffs note in their supplemental brief filed in response to the Court's request, that the Court's review is limited to the administrative record. Typically, courts considering challenges to discretionary decisions of insurers under ERISA are limited to the administrative record before the insurer at the time the insurer made its decision. *See Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1041 (9th Cir. 2014). Here, however, Plaintiffs did not lodge an administrative record with the Court. Instead, Plaintiffs submitted numerous documents supporting their summary judgment filings without identifying which documents, if any, were part of the administrative record and which portions of the administrative record were not provided to the Court. Plaintiffs also requested that Defendant stipulate to the evidentiary foundation and authenticity of numerous documents that Plaintiffs used in their summary judgment submissions, and agreed similarly to stipulate to documents that Defendant used in his summary judgment submissions. Given that many of the documents submitted by Plaintiffs were obtained by them through discovery in this action, it does not appear that Plaintiffs' submissions were limited to the administrative record.

PAGE 4 – OPINION AND ORDER

The Court declines to delay this action by ordering Plaintiffs to lodge the administrative record. The Court considers all submissions in this case, even if they are not within the administrative record, for two reasons. First, because Plaintiffs argue judicial estoppel, which does not involve any discretionary decisions under ERISA, the Court may look outside the administrative record in considering that argument. Second, regarding the parties' dispute relating to Plaintiffs' "discretionary" decision that Defendant's back surgeries and related expenses fall under the third-party provision of the Trust Fund Plan, although the Court would typically be limited to the administrative record in considering this issue, the Court finds that to the extent all of Cox's medical records relating to his back surgeries and related treatment, including the four independent medical evaluations, might not have been included in the administrative record, then expansion of the administrative record would be appropriate.

Because this dispute centers on whether Cox's injuries for which the Trust Fund paid medical bills were the responsibility of a third party and whether the Trustees appropriately exercised their discretion by insisting that Cox's settlement proceeds be provided to the Trust Fund, the Court finds it appropriate to consider all of Cox's medical records relating to the disputed injuries, regardless of whether they were in the administrative record. This will enable the Court effectively to consider whether the Trustees abused their discretion. *See id.* (noting that to review abuse of discretion, a court must "consider all of the relevant circumstances in evaluating the decision of the plan administrator. A straightforward abuse of discretion analysis allows a court to tailor its review to *all the circumstances before it*" and concluding that "where actual medical records would be helpful to determining the accuracy of the medical facts upon which the administrator makes its coverage determination—expansion of the record in the district court is appropriate" (emphasis in original) (quotation marks omitted)).

## BACKGROUND

At all relevant times, Cox had medical insurance coverage under the Trust Fund Plan.

That plan contains a provision entitled Third Party Liability, which states, in part:

> The Plan shall not provide benefits for any injury or illness if any
> third party or parties (including an insurance company) is or may
> be responsible for the injury or illness or for payment or
> reimbursement of any expenses arising out of the injury or illness.
>
> * * *
>
> If a covered person or any other person claims any benefits under
> this Plan for any treatment or service or loss of income because of
> an injury or illness with respect to which a third party is or may be
> responsible, then the following shall apply:
>
> * * *
>
> - Any person who receives payment from any third party or
>   parties (whether by lawsuit, settlement, or otherwise)
>   because of a covered person's injury or illness shall
>   immediately and first reimburse the Plan, or cause the Plan
>   to be reimbursed, for the full amount of all benefits
>   advanced or payments otherwise made under this Plan for
>   treatment, service, or loss of income with respect to the
>   injury or illness (or, if less, the full amount of the payment
>   received from the third party). The Plan shall have a first
>   right of reimbursement out of the proceeds of any such
>   recovery, without reduction for attorney fees or other costs
>   related to the recovery, and regardless of whether the
>   covered person and his or her spouse and dependents are
>   made whole by the recovery.

Dkt. 53-1 at 2-4.

This provision also provides that:

> The Plan shall have a first security interest and a lien on any
> payment made to or on behalf of a covered person . . . from any
> third party or parties to the full extent of the benefits advanced or
> otherwise paid under the Plan for any treatment . . . because of the
> injury . . . for which the third party is or may be responsible.

*Id.* at 4.

In November 2007, Cox was involved in a motor-vehicle accident in which he sustained injuries, including back injuries. Cox received medical treatment for those injuries. In September 2008, Cox saw a neurosurgeon for his back condition. On October 2, 2008, Cox was involved in a second motor-vehicle accident that was not his fault and in which he also sustained injuries. Cox believed that the second automobile accident caused him additional back pain. The insurance carrier for the negligent driver in the October 2008 accident was American Family Insurance ("American Family"). Cox's personal automobile insurance carrier was Country Preferred Insurance Company ("Country").

In September 2009, Cox received cervical discograms. He initially submitted the bills for the discograms to his personal automobile insurance carrier, Country, which denied reimbursement. County claimed the discograms were not related to the 2008 automobile accident, but were instead related to Cox's pre-existing back condition. Cox later submitted the discogram bills to the Trust Fund. The Trust Fund denied coverage for Cox's discograms because Cox did not submit the bills within one year of the date of the treatment.

On March 2, 2011, and March 9, 2011, Cox underwent two spinal surgeries performed by V. James Makker, M.D. Dkt. 52-12 at 1-4. Dr. Makker had examined Cox and recommended immediate surgery. *Id.* at 9. Dr. Makker opined that the "major contributing cause of [Cox's] current thoracic and lumbar conditions and need for treatment is most likely the combination of his two motor vehicle accidents on 11-16-07 and 10-2-08." *Id.* Cox submitted the surgery bills to the Trust Fund. The Trust Fund paid for Cox's back surgeries.

On August 26, 2011, Cox's attorney sent a letter to the Trustees, the Trust Fund Plan administrator (Regence Blue Cross Blue Shield), Country, and American Family. In this letter, Cox asserted through counsel that his 2008 automobile accident necessitated Cox's two back

surgeries. Cox requested a settlement amount of $450,000 from American Family. Cox also

requested that the Trust Fund pay some outstanding medical expenses. The letter from Cox's

attorney further noted that:

> I assume that Blue Cross and/or Welfare Trust will elect to assess a
> lien for all amounts it has paid and will pay against settlement
> proceeds collected. We will treat your interests to date and any
> amounts that are paid on the outstanding medicals as part of a
> contractual and/or statutory lien which we will need to resolve
> once the claims against American Family are resolved.

Dkt. 52-2 at 2.

On September 20, 2011, counsel for the Trust Fund responded by sending Cox's attorney

a letter that attached two agreements, one for counsel and one for Cox, and requiring that those

agreements be signed before the Trust Fund would pay the requested outstanding medical

expenses on behalf of Cox. Dkt. 52-3. Counsel for the Trust Fund noted that before the

August 26, 2011 letter, the Trust Fund was unaware that Cox's surgeries and other medical

expenses were caused by a motor vehicle accident. Both Cox and his attorney signed the required

documents. Dkt. 52-4.

The agreement signed by Cox explains the Trust Fund's rights to reimbursement for paid

medical expenses that are or may be the responsibility of a third party. The agreement provides,

in relevant part:

> The Plan does not provide benefits for any injury or illness for
> which a third party is or may be responsible, except as provided
> below. If you (or your spouse or any dependent) has a claim or
> right for indemnification, damages or any other payment against
> any third party or parties (including an insurance carrier) who is or
> may be responsible for any injury or illness, you are not entitled to
> any benefits from the Plan for that illness or injury. If you satisfy
> the Plan's requirements, it will, however, advance benefits to you.
> When you recover from the third party, you will be required to
> reimburse the Plan for any payments that have been advanced.
>
> * * *

When any recovery is obtained from a third party or insurance company, whether as a result of a settlement, arbitration award, court judgment or in any other way, an amount sufficient to satisfy the Plan's reimbursement amount (the amount of benefits advanced on your or your spouse or any dependent's behalf) will be paid into a trust account and held there until the Plan's claim is resolved by mutual agreement, arbitration or court order. If the funds necessary to satisfy the Plan's reimbursement amount are not placed in trust, the injured person shall be personally liable for any loss the Plan suffers as a result.

Any person who receives payment from any third party or parties because of your injuries or illness shall immediately and first reimburse the Plan, or cause the Plan to be reimbursed, for the full amount of all benefits advanced or payments otherwise made under this Plan for treatment, service, or loss of income with respect to the injury or illness (or, if less, the full amount of the payment received from the third party). The Plan shall have a first right of reimbursement out of the proceeds of any such recovery, and regardless of whether you, your spouse, and your dependents are made whole by the recovery.

Dkt. 52-4 at 2-3.

The document signed by Cox's attorney is an agreement regarding the Trust Fund's right

to reimbursement from any settlement proceeds. In relevant part this agreement states:

Under the terms of this agreement, you agree to reimburse the Plan, to the extent of any recovery you receive, for the full amount of benefits provided to or on behalf of your client witl1 respect to the illness or injury for which the third party is or may be responsible. You agree to reimburse the Plan immediately after receipt or collection of the recovery, regardless of whether your client is made whole by the recovery and before any disbursement of funds to your client.

If any question or dispute arises regarding the amount owed to the Plan, any monies received from the third party or his or her insurer wilt be held in your client's trust account until the question or dispute is resolved.

In consideration of your signing this agreement, the Plan agrees to allow a deduction from any recovery for attorney fees or costs equal to the lesser of the actual fees and costs percentage or one-third of any recovery.

Dkt. 52-4 at 7.

Cox filed a lawsuit against the driver in the October 2008 accident, who was insured by American Family. In November 2011, Cox responded to discovery requests in that lawsuit. In responding to these discovery requests, Cox asserted that his discograms and back surgeries, among other medical expenses, were caused by the 2008 accident and were the responsibility of the at-fault motorist.

To assess Cox's claim against its insured, American Family noted that it would require Cox undergo an independent medical evaluation. Over the course of pursuing and litigating his automobile accident claims, Cox underwent three independent medical evaluations and one independent medical records review. The first evaluation was on September 7, 2009, and was performed by KC Snellgrove, D.C. Dkt. 54-1 at 105-128. Dr. Snellgrove discussed Cox's accident, treatment, medical records, and examination and concluded that "Mr. Cox's current symptoms are not causally related to the October 2, 2008 minor collision. . . .Treatment beyond 6 weeks cannot be substantiated by any clinical rationale or standards of care." *Id.* at 122-23.

On February 24, 2010, Cox underwent a second independent medical evaluation, which was performed by Bradley Bergquist, M.D., a neurosurgeon. *Id.* at 130-40. Dr. Bergquist stated that "[t]he MRI scans of the spine that were done prior to October 2, 2008 document degenerative change as described in the radiology section. There is no essential difference between the studies done before and after [the accident]." *Id.* at 138. Dr. Bergquist attributed Cox's condition to "age-related degenerative change." *Id.* at 137.

On June 28, 2013, after the two back surgeries, Cox's medical records were provided to Richard Rosenbaum, M.D., a neurologist, who performed an independent medical records review. *Id.* at 142-48. After reviewing Cox's records, Dr. Rosenbaum concluded that "[t]he

surgeries of 2011 were unnecessary." *Id.* at 147. Dr. Rosenbaum also concluded that "the motor vehicle accident of 2008 did not, in terms of medical probability, necessitate the back surgery." *Id.*

On October 7, 2013, Cox was examined by Leslie D. McAllister, M.D., a neurologist, for another independent medical evaluation. *Id.* at 150-65 and Dkt. 54-2 at 1-6. Dr. McAllister concluded that her examination of Cox and his medical records supports "a period of palliative treatment after the 2008 accident of two to three months at most to include chiropractic, massage, or acupuncture." Dkt. 154-2 at 5. Dr. McAllister further opined that the surgeries were not related to the automobile accident. *Id.*

On October 5, 2012, counsel for Cox sent a demand letter both to Country and to counsel for Plaintiffs. Counsel for Cox demanded $100,000 from Country for under-insured motorist coverage and demanded that the Trust Fund pay Cox's outstanding medical bills. Counsel for Cox also requested that Country approve a settlement between Cox and American Family in the amount of $45,000. Country agreed to the settlement of $45,000, and specifically noted that because Cox had "settled light" (*i.e.*, settling for less than American Family's insured's policy limits), Cox must have been made whole by the settlement.

On January 26, 2013, Cox settled with the American Family and the at-fault motorist for the 2008 accident for a single payment of $45,000. As part of this settlement, Cox released any and all claims against the at-fault motorist. The proceeds from this settlement are currently being held in trust by Cox's attorney.

On February 11, 2014, Cox's attorney forwarded to Plaintiffs' counsel the results of the independent medical evaluations, adding that Cox's surgeon, Dr. Makker, is no longer licensed and apparently has left the country. On February 19, 2014, Cox's attorney wrote a letter to

Plaintiffs' counsel, explaining that many doctors had seen Cox and determined that his back surgeries were not caused by the motor vehicle accidents, and that Cox's surgeon had been prosecuted for performing unnecessary surgeries and had lost his medical license.

On October 16, 2014, counsel for the Trust Fund sent an email to Cox's counsel requesting a letter explaining Cox's position. Dkt. 54-1 at 53. Counsel for the Trust Fund also stated that Cox's letter needs to "assure the trustees that [Cox] will argue that what the Trust paid for – the surgery – was related to the [car accident]." *Id.*[1] On November 24, 2014, Cox's attorney responded with a detailed letter. Dkt. 54-1 at 46-51.[2] This letter addressed numerous issues, including: (1) informing the Trustees that the arbitration with Country has been indefinitely postponed; (2) noting that the overwhelming medical evidence is that the back surgeries were not

---

[1] The email actually states that the Trust Fund wants assurance that Cox "will argue that what the Trust paid for – the surgery – was related to the *surgery*." Dkt. 54-1 at 53 (emphasis added). It appears from the context of the parties' communications, however, that stating that the surgery was related to the "surgery" was a scrivener's error and that what was meant is that the surgery was related to the car accident.

[2] Plaintiffs object to the admission of their counsel's October 16, 2014 email and Cox's attorney's November 29, 2014 letter as inadmissible settlement communications under Federal Rule of Evidence 408(a)(2). Under Rule 408(a)(2), settlement negotiations may not be admitted to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction. Settlement negotiations may, however, be admitted for "another purpose," including proving bias or negating a contention of undue delay. The Court considers the correspondence submitted by Cox not to prove or disprove liability, but in considering the appropriateness of Plaintiffs' argument for judicial estoppel based on Cox's alleged contradictory statements. The settlement negotiations are relevant to Cox's state of mind and motive when he was asserting the allegedly contradictory positions and are therefore admissible. *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161-62 (9th Cir. 2007) ("In other words, Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail. When statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured."); *Crues v. KFC Corp.*, 768 F.2d 230, 233-34 (8th Cir. 1985) (holding that use by offeror to show unreasonableness of recipient not excluded by Rule 408 because "the rule is concerned with excluding proof of compromise to show liability of offeror"). Accordingly, Plaintiffs' motion objection to the submission of the parties' settlement negotiations is overruled.

caused by the motor vehicle accidents and that "[i]n the opinion of everyone other than the Trust, there exists no legally sufficient admissible evidence that either of the two surgeries the Trust paid for were reasonable and necessary on account of injuries sustained in the October 2, 2008 motor vehicle collision," Dkt. 54-1 at 46; (3) requesting that the Trust Fund participate in the binding arbitration with Cox and Country, arguing that the arbitration is only occurring because the Trust Fund insists that the back surgeries were the responsibility of the at-fault motorist, demands reimbursement from the accident settlement, and maintains that Cox must litigate his underinsured motorist claim; (4) explaining that despite Cox's attorney agreeing to the Trust Fund's demand that Cox vigorously prosecute his under-insured motorist claim, Cox's attorney has come to the conclusion that there is no way to win this claim and that there is no way to prove that the back surgeries were the responsibility of the at-fault motorist; (5) reiterating that four independent medical evaluations and reviews, conducted on September 7, 2009, February 4, 2010, June 28, 2013, and October 7, 2013, all concluded that the back surgeries were not the responsibility of a third party; (6) summarizing the medical evidence from 2007 through 2011 from Cox's treating neurosurgeon, Dr. Jordi Kellogg, that demonstrates that Cox's surgeries performed by Dr. Makker were not the responsibility of a third party; (7) requesting that the Trust Fund release its claim on Cox's settlement if the Trust Fund is not willing to prosecute and prove its contention that Cox's surgeries were the responsibility of a third party; and (8) attaching a compact disc containing copies of all of Cox's medical records.

On January 5, 2015, the Trust Fund responded by email to Cox's letter. The Trust Fund's counsel reiterated the Trust Fund's position that Cox's $45,000 settlement "was made on the assumption that the spinal surgeries were caused by the 2008 accident." Dkt. 54-1 at 56. Thus,

the Trust Fund demands, Cox must reimburse the Trust Fund from that settlement. *Id.* One week

later, the Trust Fund filed this action. Dkt. 1.

 While this lawsuit was pending, a binding arbitration was held between Cox and Country,

without Plaintiffs' participation. The arbitrator ruled that Cox's back surgeries were not

necessitated by the 2008 car accident. Dkt. 54-8 at 31-34. The arbitrator did not find persuasive

the limited medical evidence that supported a conclusion that Cox's back surgeries and ongoing

back treatments were required by the car accident; instead, the arbitrator found persuasive the

overwhelming medical evidence to the contrary. *Id.* The arbitrator found that the 2008 car

accident caused only "moderate and temporary aggravation of [Cox's] previous back

symptoms." *Id.* at 34. The arbitrator did not find any medical treatments after May 2009 were

proven to be necessitated by the car accident.

## DISCUSSION

### A.  Plaintiffs' Motion for Summary Judgment

 Plaintiffs argue that summary judgment should be granted in their favor. Plaintiffs argue

they are entitled to summary judgment because: (1) Cox is judicially estopped from arguing that

his back surgeries and other medical expenses were not the responsibility of a third party; and

(2) the Trustees appropriately exercised their discretionary authority under the Trust Fund Plan

in determining that Cox's back surgeries and other relevant medical expenses were the

responsibility of a third party. For the reasons discussed below, Plaintiffs arguments are

unavailing and their motion for summary judgment is denied.

### 1.  Judicial Estoppel

 Plaintiffs argue that Cox is judicially estopped from arguing that his back surgeries and

related injuries were not the responsibility of a third party. Plaintiffs rely heavily on the fact that

Cox and his counsel repeatedly asserted that Cox's back surgeries were necessitated by the October 2008 car accident.

The decision to impose judicial estoppel is left to the discretion of the district court. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In considering whether to apply the doctrine of judicial estoppel, district courts may consider several questions, including:

> (1) Is the party's later position "clearly inconsistent with its earlier position?" (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?"

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51). This is not an exhaustive enumeration of the factors that a court may consider. *New Hampshire*, 532 U.S. at 751. For the reasons that follow, the Court declines to preclude Cox, under the doctrine of judicial estoppel, from arguing that his two back surgeries and later medical costs were not related to his automobile accident on October 2, 2008.

Cox has consistently taken the position that he suffered injuries in the automobile accident on October 2, 2008, and that those injuries were the responsibility of a third party. Originally, Cox asserted that his two back surgeries were necessary because of that accident. He continued making this claim throughout the litigation of his automobile accident injuries, including at arbitration. Before this Court, however, Cox has changed his position and argues that the back surgeries were not caused by the automobile accident. The Court finds that Cox's positions are "clearly inconsistent." The Court, thus, turns to the second *New Hampshire* factor.

The Ninth Circuit has explained that the "second *New Hampshire* factor—that one of the courts has been misled—is often dispositive." *Baughman*, 685 F.3d at 1133. Judicial estoppel is appropriate where "a party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position." *Id.* With respect to settlements, the Ninth Circuit has explained that "those who 'induce [ ] their opponents to surrender have prevailed as surely as persons who induce the judge to grant summary judgment.'" *Baughman*, 685 F.3d at 1133-34 (alteration in original) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 604–05 (9th Cir. 1996)). Furthermore, "[w]hen a party settles a case involving false allegations or claims, the court is deemed to have been misled. This is because it's the coercive power of the court—the judgment it might render if the case is litigated to its conclusion—that's the driving force behind such settlements." *Id.* at 1134.

Cox sued and later settled with American Family for injuries arising out of the October 2008 automobile accident. In that suit, Cox alleged that the two back surgeries were a result of the accident. Cox sought $450,000 in compensation for his injuries, including more than $60,000 in medical costs for Cox's back surgeries. Plaintiffs do not assert that Cox made materially false and misleading allegations without a reasonable basis in fact in order to coerce a settlement, nor does the record support such an inference. The record supports the conclusion that Cox genuinely believed that the 2008 accident necessitated his back surgeries. Thus, the Court finds that the Court was not misled. Cox asserted a factual position that, at the time, he believed to be accurate. This genuine belief, however, was incorrect.

Although Cox asserted in his case against American Family that the accident triggered his need for back surgery, later independent medical evaluations, including those obtained by American Family, consistently determined that Cox's back surgeries were not necessitated by the 2008 car accident. Thus, Cox's settlement with American Family was for less than the at-fault motorist's policy limits and much less than the medical costs incurred for his back surgeries. Viewing the record in the light most favorable to Cox, it does not appear that

American Family considered Cox's back surgeries to be caused by the accident and did not settle with Cox for the costs of the surgeries. Had American Family considered the back surgeries to be caused by the accident, the settlement likely would have been for policy limits because the surgery bills alone were more than policy limits. Additionally, American Family had obtained an independent medical evaluation that had concluded that Cox's back surgeries were not necessitated by the accident.

Cox continued to maintain in his under-insured motorist claim against his personal automobile insurer, Country, that the 2008 accident caused his need for back surgery. Cox explains, however, that he did so only because Plaintiffs were asserting a lien against Cox's settlement proceeds on the theory that his back surgeries were the responsibility of the third-party automobile insurer. Cox was also concerned about the possibility of inconsistent results between the arbitration and this case. The record evidence supports these assertions. Further, Cox lost his argument in the binding arbitration, which resolved Cox's under-insured motorist claim against him. In addition, Plaintiffs had the opportunity to exercise their subrogation rights and participate in the binding arbitration. Indeed, Cox repeatedly requested that the Trust Fund do so, but the Trust Fund chose to not avail itself of that opportunity.

"Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." 18B Arthur R. Miller, *et al*., FEDERAL PRACTICE AND PROCEDURE § 4477 (2d ed. 2016). The Court finds that there is a good explanation for Cox's inconsistent positions before this Court and in arbitration—Cox was unsuccessful in asserting his earlier position and new medical information arose that contradicted Cox's claim. Critical to the judicial estoppel analysis is that the party being estopped was *successful* in maintaining the inconsistent position in an earlier

proceeding. *Id.*; *Baughman*, 685 F.3d at 1133. That is not the case here. Moreover, the record

demonstrates that Cox was reluctant to continue to pursue the position that the surgeries were

necessitated by the accident and felt compelled by Plaintiffs to pursue such an argument. Further,

because Plaintiffs could have participated in the arbitration proceedings but chose not to do so,

there was no unfair detriment imposed on Plaintiffs by Cox changing his position after losing at

arbitration.

Plaintiffs cite to *Board of Trustees v. Moore*, 800 F.3d 214 (6th Cir. 2015), *Kennedy v.*

*Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996), and *Board of Trustees for Laborers Health &*

*Welfare Trust Fund for N. Cal. v. Hill*, 2008 WL 5047705 (N.D. Cal. Nov. 25, 2008), to support

their argument that Cox should be judicially estopped from arguing that his two back surgeries

were not costs that are, or may be, the responsibility of a third party. These cases are all

distinguishable, most notably because in these cases, unlike in this case, there was no dispute that

the underlying injuries and resulting medical costs were caused by and the responsibility of a

third party. The parties may have disputed whether the settlement amounts included

compensation for the disputed medical bills, but no one disputed that the underlying injuries

were caused by a third party. Here, the heart of the dispute is that Cox's back surgeries were not

the responsibility of any third party.

Unlike Plaintiffs here, the ERISA plan administrators in *Moore* intervened in the state

court action in order to protect their subrogation rights. Additionally, in *Moore* the injured party

"never disputed that the state court defendants caused his injuries." *Moore*, 800 F.3d at 222. Cox,

however, does dispute that a third party caused his need for back surgeries. The Sixth Circuit

noted in *Moore* that even if the injured party had disputed whether the third party caused his

injuries, the record supported a finding that the settlement was entered-into because the injured

party alleged his injuries were caused by the third party and that "the facts in the record—the state court pleadings and the settlement—would lead any fact-finder in *federal* court to conclude that the municipal defendants caused Moore's injuries . . . ." *Id.* at 222-23 (emphasis in original). Unlike in *Moore*, the record here does not support a finding that Cox's back surgeries were caused by his 2008 accident.

In *Hill*, the Court found that the plaintiff specifically used the fact that she would have to reimburse her medical insurance plan for medical bills as "leverage" in settlement negotiations to "persuade" the tortfeasor "to pay a larger sum." 2008 WL 5047705, at *2. Like in *Moore*, and unlike in this case, in *Hill* no party argued that the relevant injuries were not caused by a third party, and the record in that case would not have supported such an argument.

In *Kennedy*, the plaintiff sued her employer for improperly discharging her based on her disability. The district court had found that the plaintiff was totally disabled and therefore could not perform the essential functions of her job, regardless of what those functions were, and thus granted summary judgment to the plaintiff's employer. 90 F.3d at 1481. The Ninth Circuit found that the district court had not abused its discretion in making such a finding. The Ninth Circuit further noted that evidence from the plaintiff's doctor and the plaintiff's sworn statements to state and federal disability offices all supported the conclusion that the plaintiff was fully disabled. *Id.* The Ninth Circuit found that the plaintiff's deposition testimony in her lawsuit against her employer was self-serving, uncorroborated, and flatly contradicted both by the medical evidence and the plaintiff's previous sworn statements. *Id.* The plaintiff's deposition testimony in that case did not, therefore, create a genuine issue of fact, according to the Ninth Circuit. *Id.*

Here, although Cox originally believed that the 2008 accident caused his need for the back surgeries, this belief was ultimately belied by the medical evidence, prompting Cox to change his position. This is the opposite situation from *Kennedy*. Cox's current position is that his back surgeries were not caused by the accident, and this is entirely consistent with the medical evidence. It was only Cox's earlier, erroneous belief that the accident did cause his need for back surgery that conflicts with the medical evidence. For all of these reasons, the Court declines to preclude Cox, under the doctrine of judicial estoppel, from arguing that his back surgeries were not necessitated by a third party.

### 2. The Trust Fund's Discretionary Decision Finding Third-Party Responsibility

The Trust Fund Plan's third-party provision states, in part: "The Board of Trustees has full discretionary authority to interpret the provisions of this Plan, including this section." Dkt. 53-1 at 3. Where a plan confers such discretionary authority to the plan administrator as a matter of contractual agreement, the standard of review is abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Further, "[a] plan administrator abuses its discretion if it . . . construes provisions of the plan in a way that conflicts with the plain language of the plan . . . ." *Pac. Shores*, 764 F.3d at 1042.

The Trustees made a discretionary determination that Cox's back surgeries and related injuries were the responsibility of a third party. Accordingly, the Trustees may bring a suit under Section 1132(a)(3) of ERISA. In such an action, the Trustees must prove both that there is a remediable wrong—meaning that Cox violated a term of the Trust Fund Plan—and that the relief sought by Plaintiffs is appropriate equitable relief. *See Gabriel*, 773 F.3d at 954. Cox concedes that Plaintiffs have properly asserted an equitable lien, established by agreement, against Cox on any funds recovered by Cox for injuries that may have been caused by a third party. All that is in

PAGE 20 – OPINION AND ORDER

dispute is whether Plaintiffs have suffered a remediable wrong, based on Cox's previously maintained but now withdrawn assertion that some of the medical expenses paid for by Plaintiffs are the responsibility of a third party.

If the medical expenses for which the Trust Fund seeks reimbursement were not the responsibility of a third party, then Cox necessarily did not violate the third-party provision of the Trust Fund Plan. Plaintiffs argue that because Cox represented, both to American Family and to Plaintiffs, that Cox's back surgeries were necessitated by the accident, and he then received compensation for that injury, the settlement is subject to Plaintiffs' equitable lien. Neither of the more recent Supreme Court decisions relied on by Plaintiffs relating to equitable liens for medical costs that are the responsibility of a third party involve this particular dispute. In those cases, it was not disputed that a third party actually was responsible for the medical costs. *See US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1543-44 (2013); *Sereboff v. Mid Atlantic Med. Servs.*, 547 U.S. 356, 359 (2006).

Plaintiffs argue that they are entitled to assert an equitable lien in an amount not to exceed $63,087.03,[3] of which $59,439.86 is for the back surgeries that Cox underwent on March 2, 2011, and March 9, 2011, and the remainder is for various treatments from November 2010 through October 2011. Plaintiffs do not specifically assert that the back surgeries were, in fact, necessitated by the accident. Instead, Plaintiffs argue only that: (1) Cox and his attorney previously represented that the surgeries were necessitated by the accident; (2) Cox's surgeon and chiropractor opined that Cox's back injuries were related to the accident; and (3) Plaintiffs, therefore, reasonably concluded that the surgeries were necessitated by the

---

[3] Although Plaintiffs assert that they seek a lien of no more than $63,086.93, *see* Dkt. 70 at 3 n.1, the amounts itemized in Plaintiffs' supplemental brief total $63,087.03, *see* Dkt. 70 at 3-4. Plaintiffs do not explain this minor difference of ten cents.

accident. Plaintiffs argue that at the time in 2011 when they asserted their right to a lien on any accident recovery, all relevant parties agreed that the lien was appropriate. Plaintiffs add that the lien, therefore, "attached" to any potential recovery at that time and cannot later "unattach" after numerous independent doctors opined that the back surgeries were not necessitated by the accident.

The Trust Fund's arguments regarding "attaching" and "unattaching" liens appear to inure only to the Trust Fund's benefit, as evidenced by the facts of this case. The Trust Fund originally did not "attach" any lien or seek any reimbursement when it paid for Cox's back surgeries. It did not consider the back surgeries to be the responsibility of a third party. The Trust Fund does not argue that it was bound by that original determination that the back surgeries were not the responsibility of a third party. To the contrary, after the Trust Fund obtained new information (Cox's letter) leading the Trust Fund to conclude that the back surgeries were the responsibility of a third party, it then asserted its equitable lien. The Trust Fund offers no argument for why, when it later received significant medical information demonstrating that the back surgeries were not the responsibility of a third party, it was not obligated to reconsider its position in light of that new information.

Plaintiffs' arguments about the equitable lien "attaching" and then "unattaching" miss the mark. Under the terms of the Trust Fund Plan, the Trust Fund is not entitled to reimbursement for the costs that it expended for treatment unless the injury or condition treated is the "responsibility of a third party," and the Trust Fund must properly exercise its discretion in making this determination about whether the injury or condition treated is the responsibility of a third party. To do otherwise breaches the fiduciary duty of the Trustees. *See Pac. Shores*, 764 F.3d at 1044 ("Fiduciaries must discharge their duties 'with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 224 n.6 (2000))).

Plaintiffs do not argue that a third party actually is, or even may be, responsible for Cox's back surgeries. Instead, Plaintiffs argue that they "relied upon [Cox's] representations about the relation of the surgeries to the accident." Dkt. 51 at 17; *see also* Dkt. 51 at 19. There is no evidence, however, that either Cox or his attorney possess the requisite medical expertise to determine whether Cox's injuries were or were not caused by a third party, which is required for concluding that the injuries are the responsibility of that third party. Moreover, the record is replete with expert medical opinions that Cox's back surgeries were not caused by the 2008 car accident and thus were not the responsibility of a third party. If the situation were reversed and Cox sought reimbursement from the Trust Fund Plan for medical costs that he and his attorney merely asserted were "caused" by an event that is covered under the Trust Fund Plan, the Court is skeptical whether Plaintiffs would simply accept the opinion of a layperson and his attorney on a question of medical causation and disregard the contrary opinions of four medical professionals.

From 2009 to 2015, the only doctor who opined that Cox's back surgery was necessitated by the 2008 car accident was Cox's own surgeon, Dr. Makker, who subsequently lost his license for performing unnecessary surgeries. For purposes of the arbitration, on November 23, 2015, Cox also obtained a short, conclusory statement from Dr. Kellogg that the back surgeries were necessitated by the car accident. Dkt. 54-4 at 23. This conclusory opinion, however, was not supported by Dr. Kellogg's contemporaneous treatment notes from 2008 through 2010, and Dr. Kellogg did not provide any reasoning or sound medical basis for this conclusion. In

contrast, the four medical practitioners who conducted Cox's independent medical evaluations and reviews all provided thorough opinions explaining in detail why Cox's surgeries and other related expenses beyond approximately six months of treatment were not necessitated by the 2008 car accident.

Plaintiffs also note that to the extent that Dr. Makker's conclusions that Cox's surgery was medically necessitated by the 2008 car accident were either fraudulent or grossly negligent, Cox is in a better position than Plaintiffs to pursue remedies against Dr. Makker. This argument also misses the point. If the evidence shows that Dr. Makker's opinion that the 2008 car accident necessitated the surgeries is not reliable or persuasive, then Plaintiffs abused their discretion in relying on it. It does not matter who could more easily pursue a medical malpractice action against Dr. Makker. Plaintiffs must properly exercise their fiduciary duties and cannot rely on the fact that they cannot easily pursue a medical malpractice claim to reach a discretionary decision that is medically unsupported by the facts. Accordingly, the Court finds that Plaintiffs abused their discretion in construing the costs of Cox's back surgeries to be the responsibility of a third party.

Plaintiffs also assert that even if the accident did not cause the need for Cox's surgeries, because Cox obtained a settlement of $45,000 by arguing that his surgeries were the responsibility of a third party, Cox has received payments for those injuries and thus must reimburse the Trust Fund. This argument is unavailing. First, the provision of the Trust Fund Plan establishing the Trust Fund's right to reimbursement has as an express condition of reimbursement that the underlying medical expense must be for an injury that was or is the responsibility of a third party. As discussed above, it was an abuse of discretion to conclude that

PAGE 24 – OPINION AND ORDER

Cox's back surgeries and other medical costs after approximately May 2009 were the responsibility of a third party. Thus, the reimbursement provision simply does not apply.

Moreover, even if the Trust Fund could obtain reimbursement for medical costs for treatment that was not the responsibility of a third party based on an estoppel-type argument from a settlement received, such a conclusion would not be warranted in this case. The evidence simply does not show, as a matter of law, that Cox received the $45,000 settlement to compensate him for the cost of his back surgeries. The settlement was only ten percent of Cox's original demand and was significantly less than policy limits, while the actual cost of the back surgeries was significantly more than policy limits. If the settlement was intended to compensate for the back surgeries, a policy-limit settlement would be expected and settling "light" only supports the conclusion that the settlement was not compensating Cox for his back surgeries (as noted by Country in its correspondence to Cox). Moreover, this settlement was reached only after two independent medical evaluations had opined that Cox's back surgeries were not necessitated by the 2008 car accident.

## B. Cox's Cross-Motion for Summary Judgment

In his cross-motion for summary judgment, Cox argues that viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, there is no genuine dispute that the two back surgeries and later medical expenses for which Plaintiffs assert an equitable lien were not the responsibility of a third party. Therefore, argues Cox, the terms of the agreement that allow Plaintiffs to assert an equitable lien do not permit Plaintiffs to assert an equitable lien for those medical expenses. For the reasons discussed above in the context of Plaintiffs' motion for summary judgment, the Court agrees with Cox.

**CONCLUSION**

Plaintiffs' motion for summary judgment (Dkt. 51) is DENIED. Defendant's motion for summary judgment (Dkt. 54) is GRANTED.

**IT IS SO ORDERED**.

DATED this 7th day of June, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge